Filed 7/7/22  In re J.H. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| In re J.H. et al., Persons Coming Under the Juvenile Court Law. | C094763 |
| YOLO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>J.H.,<br><br>        Defendant and Appellant. | (Super. Ct. Nos. JV2020521, JV2020522, JV2020523, JV2020524) |

Appellant Je.H. (father) is the father of the minor J.H., and three younger half-siblings, I.H., Av.H, and Ar.H. (the minors).  Father contends that the juvenile court erred by: (1) denying his petition for modification without an evidentiary hearing (Welf. & Inst. Code, § 388);[1] (2) finding the beneficial parental relationship exception did not

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

1

apply to prevent the termination of parental rights; and (3) the Yolo County Health and Human Services Agency (the Agency) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.).

We will conditionally affirm subject to full compliance with the ICWA on remand, as described in this opinion.

## I. BACKGROUND

### Initial Dependency Proceedings

On February 28, 2020, the Agency filed a petition under section 300 regarding the minor, J.H. (born December 2005) and her three younger half-siblings, I.H. (born September 2016), Av.H. (born October 2017), and Ar.H. (born May 2019). The presumptive father of all four children is father, the mother of J.H. is B.M., and the mother of the younger three children is A.S. The children were removed from father due to substance abuse and ongoing domestic violence in the home where they lived with father and A.S. The petition alleged failure to protect under section 300, subdivision (b) and abuse of a sibling under section 300, subdivision (j). J.H. had been residing with her father for the past three years after she was removed from the care of her mother, B.M., for physical abuse and substance abuse. In addition to the three younger children, father and A.S. have five other children who are not in their care, and a lengthy history of prior dependency cases.

On February 23, 2020, A.S. was arrested for assaulting father, at which time she disclosed extensive domestic violence and drug use in the home. J.H. reported that A.S. hit father and tried to hit her until father intervened.

The minors were detained at a hearing on March 2, 2020. Father submitted on detention, and neither mother was present.

### Jurisdiction and Disposition

In the jurisdiction report, the Agency reported J.H. was interviewed and reported that A.S. used drugs and that fights between A.S. and her father happened all the time.

Father reported that A.S. was the aggressor and that he pushed her when she went after J.H. He denied drug or alcohol use even though he tested positive for methamphetamines.

The Agency filed a disposition report recommending that father and A.S. both be bypassed for services under section 361.5, subdivision (b)(10) and (11) and that J.H.'s mother, B.M., be offered family reunification services. B.M. was noted to have untreated mental health issues and a history of physical abuse against the minor, who did not want to return to her care or have any contact with her.

On May 18, 2020, the parties resolved the matter of jurisdiction, and the juvenile court sustained the petition as amended by agreement and took jurisdiction over all four children. The amended petition stated that the children were at risk due to domestic violence between father and A.S., which they both denied, that the children were at risk due to the A.S.'s substance abuse and untreated mental health, and that the children were at risk due to father's history of substance abuse. The petition stated that father tested positive for methamphetamine on February 25, 2020. He denied use and claimed it was a result of medication, but the lab confirmed it was positive for methamphetamine. Additionally, the petition contained three section 300, subdivision (j) allegations regarding the half siblings.

On June 10, 2020, the juvenile court began the contested disposition hearing but granted a partial continuance as to J.H. only as requested by her mother, B.M. The social worker testified, recommending bypass for father because of his prior termination of parental rights regarding four other children involving three separate dependency cases related to drug use and domestic violence. Additionally, father tested positive for methamphetamine, and he had no insight into why the children were removed and how his actions contributed, blaming A.S. Father had not reported ever completing a substance abuse program and was only attending 12 step meetings at the time of the hearing. Father told the social worker he had been clean for 10 years, even though the

3

dependency cases involving his substance abuse and his other children took place between 2012-2014.

The social worker further testified that father told her the domestic violence had been going on for nearly a year. Father took no steps to protect the children from the domestic violence that took place in the past year. Father told the social worker that A.S. was a risk to J.H., but not to the younger three children. A.S. reported that both she and father were using drugs in the home and that father was physically violent toward her and she sustained a black eye the night of the incident that led to the children's removal. Although father had obtained a restraining order against A.S., he had previously indicated he would leave A.S., only to reunite with her again and again.

Father testified that he did not have a history of using illegal substances and denied telling the social worker that he had previously used drugs or that he had been clean for more than 10 years. He stated he has never failed a drug test, despite testing positive for methamphetamine at the time of removal.

At the conclusion of the disposition hearing on the younger children's case, the juvenile court noted concern about father's denial of his positive test and his lack of insight into domestic violence. He was unable to protect the children, despite nine years of services. The court then found by clear and convincing evidence that both father and A.S. had court-ordered termination of services for four siblings and neither father nor A.S. had made reasonable efforts to treat the problems that led to the removal of the siblings. The court further found that parental rights had been terminated on the siblings and neither father nor A.S. had made reasonable efforts to treat the problems that led to the removal of the siblings. The court found that there was no evidence presented that would convince the court that it would be in the children's best interests to offer reunification services. The court bypassed father and A.S. for services as to the younger three siblings and set a section 366.26 hearing.

4

At the August 5, 2020 contested disposition hearing as to J.H., the juvenile court agreed to consider all evidence presented at the prior hearings regarding three younger half-siblings and heard some further testimony from the social worker and father. After the conclusion of testimony, the court found by clear and convincing evidence that the Agency showed that section 361.5, subdivision (b)(10) and (11) applied due to prior ceasing of services and termination of parental rights and that father has not subsequently made an effort to treat the reasons that led to removal. Because the court could not find by clear and convincing evidence that reunification services would be in the best interests of the minor, the court then bypassed father for services, ordered family reunification services to J.H.'s mother, B.M., and set a six-month section 366.21, subdivision (e) hearing for J.H. The court allowed visitation to remain as is for father at two hours in person per week plus one hour on Zoom for all four children, and the Agency was granted authority to increase visitation and phone contact.

### *Section 388 Petition and Section 366.26 Hearing*

On May 6, 2021, father filed a section 388 petition to change a court order, requesting family reunification services and stating that the request was in the children's best interests because father's visits are positive, father and children have a close bond, the children are always happy to see the father, and Ja.H consistently asks to live with father. Father stated he had continued in domestic violence counseling and drug testing, had a restraining order against A.S., and had stable housing. He claimed that he had broken the cycle of reuniting with her. The record does not reflect any ruling on this petition.

On August 2, 2021, father was represented by new counsel, who filed another section 388 petition for father and requested a contested section 366.26 hearing. The new section 388 motion was nearly identical to the one filed by father's previous counsel. Father continued to participate in the same services and was still not in a relationship

5

with A.S. He relied on the same statements that the children are affectionate and excited to see him and have stated they want to go back home with him.

On August 30, 2021, the juvenile court held a hearing on the section 388 petition and the contested section 366.26 hearing. Father's attorney stated the biggest change of circumstances was that father was no longer with the mother, A.S., but that was also not a change as he claimed that he and A.S. had separated at the time of the disposition. He also claimed he had completed some services and would have done more services but for limitations due to the COVID-19 pandemic. The court found that there was no prima facie showing of best interests of the children and very little showing of change of circumstances, denying father's request for an evidentiary hearing on the section 388 motion.

The juvenile court turned to the contested section 366.26 issues. Father testified that his visits were every other week with the minors, and he visited alone with J.H. twice a week and talked to her on the phone. At the visits, he would bring food and the children would say "daddy" and hug him, hold him, and kiss him. He thought the visits went very well. J.H.'s counsel stated that her preference was for father to receive more services, but if he could not, J.H. wanted to be adopted by the family where she was currently placed. The court found by clear and convincing evidence that all four children were adoptable. The court then noted that the only exception raised was the parental bond exception and stated, "But there has been no showing that the benefit of not terminating rights would outweigh the benefit of permanency, and there has been no showing that it would be detrimental to the children." The court then terminated parental rights. Visitation with father was ordered to be at the discretion of the caregivers.

### ICWA Compliance

At the time of detention, the mother A.S. reported that she was unsure if she had any Native American Ancestry. Father reported that he did not have any Native American ancestry. B.M., the mother of J.H., could not be located. At the detention

6

hearing, father claimed that he had no Native American ancestry but that both A.S. and B.M. might have some Native American ancestry. On March 2, 2020, father signed an ICWA-20 as to all four children which did not check any boxes indicating Native American ancestry. On February 3, 2021, the court found that J.H. was not an Indian child. J.H.'s mother, B.M., was not available for inquiry under ICWA, but the maternal grandfather denied any Native American ancestry. The mother of the younger children, A.S., reported that she had Blackfoot and Apache ancestry. The maternal grandmother reported Shawnee and Cherokee ancestry.

On August 10, 2020, the social worker contacted the Eastern Shawnee Tribe of Oklahoma, the Absentee Shawnee Tribe of Oklahoma, Eastern Band of Cherokee, Cherokee Nation, and United Keetowah Band of Cherokee to inquire about the minors' ICWA status. The Eastern Shawnee and the Cherokee Nation responded that the minors were not eligible. The social worker contacted the remaining tribes by mail again on April 19, 2021, and received a response from the Absentee Shawnee Tribe of Oklahoma. At the section 366.26 hearing on August 30, 2021, the Agency admitted a letter from the Eastern Band of Cherokee stating the minors are not eligible, a letter from Cherokee Nation that the minors are not eligible, a letter from the Eastern Shawnee stating that the minors were not eligible, and documents verifying what information the Agency gave to the tribes. The Agency spoke to the maternal grandmother, A.S.'s mother, who indicated Shawnee and Cherokee heritage but no names of relatives that would assist with further inquiry. The juvenile court made a finding that ICWA did not apply at the end of the section 366.26 hearing and noted that it had already made that finding as to J.H.

## II. DISCUSSION

*A.      Section 388 Motion*

Father contends the juvenile court abused its discretion in denying his section 388 petition without an evidentiary hearing. He claims the petition showed both a change in

7

circumstances and that the requested modification would be in the minors' best interests. We disagree.

A petition to change or modify a juvenile court order under section 388 must factually allege that there are changed circumstances or new evidence to justify the requested order and that the requested order would serve the minor's best interests. (*In re Daijah T.* (2000) 83 Cal.App.4th 666, 672.) The petitioner has the burden of proof on both points by a preponderance of the evidence. (Cal. Rules of Court, rule 5.570(h)(1)(D).)[2] In assessing the petition, the court may consider the entire history of the case. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.) The petition must be liberally construed in favor of its sufficiency. (Rule 5.570(a).) Nonetheless, if the juvenile court finds that even so construed the petition fails to make a prima facie case of changed circumstances and best interests under section 388, the court may deny the petition without an evidentiary hearing. (*In re Justice P., supra*, at p. 189; *In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1413; *In re Zachary G.* (1999) 77 Cal.App.4th 799, 806; see rule 5.570(d).)

We review the denial of a section 388 petition for abuse of discretion. (*In re S.R.* (2009) 173 Cal.App.4th 864, 870; *In re J.T.* (2014) 228 Cal.App.4th 953, 965.)

Father's section 388 petition alleged that the requested change would benefit the minors because father's visits were positive, father and the minors have a very close bond, and the minors were always happy to see father at visits and run and hug him. The evidence attached to the motion consisted of evidence of services, drug tests, meetings, a declaration by father, and photos of him with the children. Father's declaration stated that the children run up to him and give him hugs when they see him and that J.H. has told him numerous times that she wants to come home. He expressed his opinion that he

_____

[2] Further undesignated rule references are to the California Rules of Court.

has a close relationship with his children and that it would be in their best interests for him to receive reunification services. He now claims his declaration was sufficient to justify a hearing. We disagree.

The facts as alleged by father would not support a finding that it was in the children's best interests to grant further reunification services because the allegations are conclusory and consist primarily of father's opinion about his bond with his children rather than the best interests of the children. (See *In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1505 [to support a prima facie finding, the facts alleged would need to be sufficient to sustain a favorable decision on the petition if supported by evidence at a hearing].) Father discussed the children's reactions to him during visits and included photos of the children, neither of which provide any indication as to why it would be in the children's best interests to grant a hearing or to grant father's request for reunification services. "[G]eneral, conclusory allegations" are insufficient to make a prime facie showing that an evidentiary hearing is warranted. (*In re Edward H.* (1996) 43 Cal.App.4th 584, 593.)

After reunification services have terminated, there is a rebuttable presumption that stability in an existing placement is in the best interest of the child. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 464.) The section 388 petition must allege, at a minimum, evidence to rebut the presumption that continued placement is in the best interests of the minor. (*In re Brittany K., supra*, 127 Cal.App.4th at p. 1506.) At this point in these dependency proceedings, the overwhelming consideration must be the minor's need for stability, continuity, and permanency. (*Ibid*.) When a minor has been in foster care for an extended period, the minor's need for continuity and stability becomes increasingly important. The need for permanency and stability often means that maintaining the current arrangement would be in the best interests of that child. (*In re Angel B., supra*, at p. 464.) Father argues that "best interests may be implied and a hearing must be held when there is evidence that the problems which led to removal have been resolved."

9

Neither case cited by father held that a hearing must be held where the parent has only alleged evidence of changed circumstances, nor did they hold that best interests may be implied in that situation. (See *In re Hashem H.* (1996) 45 Cal.App.4th 1791, 1799; *In re Zachary G., supra*, 77 Cal.App.4th at p. 807.)

We similarly reject father's claim that he made a prima facie showing of changed circumstances. " '[T]he term "new evidence" in section 388 means material evidence that, with due diligence, the party could not have presented at the dependency proceeding at which the order, sought to be modified or set aside, was entered.' " (*In re D.B.* (2013) 217 Cal.App.4th 1080, 1093, quoting *In re H.S.* (2010) 188 Cal.App.4th 103, 105 [expert opinion based on evidence available at jurisdiction hearing did not constitute " 'new evidence' " within meaning of section 388].) A change in circumstances "must relate to the purpose of the order and be such that the modification of the prior order is appropriate. [Citations.] In other words, the problem that initially brought the child within the dependency system must be removed or ameliorated. [Citations.] The change in circumstances or new evidence must be of such significant nature that it requires a setting aside or modification of the challenged order." (*In re A.A.* (2012) 203 Cal.App.4th 597, 612.)

Here, father merely alleged he continued in the same services and continued separation from A.S. that he discussed during the disposition hearing. He did not present any evidence of an actual change of circumstances. Thus, he failed to make a prima facie showing that circumstances had changed since the prior court order, and it was appropriate for the court to deny a hearing on the section 388 petition without an evidentiary hearing. (Rule 5.570(a), (e); *In re Edward H., supra*, 43 Cal.App.4th at p. 592.) Even where a parent is engaged in services, has clean drug tests, and visits the children regularly, such facts are not legally sufficient to require a hearing on a section 388 petition. (*In re Angel B., supra*, 97 Cal.App.4th at pp. 464-65; *In re Jamika W.* (1997) 54 Cal.App.4th 1446, 1451.)

10

*B.*     *Beneficial Parental Relationship Exception*

Father challenges the juvenile court's ruling that he had not presented sufficient evidence to establish that the beneficial parental relationship exception to adoption applied.  He argues that the Agency failed to provide a sufficient assessment of the relationship between father and the minors.  He further argues that the juvenile court abused its discretion by considering an improper factor, post-adoption contact.  As we shall explain, father has failed to establish the juvenile court erred.

At a section 366.26 hearing, when the juvenile court finds by clear and convincing evidence the child is adoptable, it is generally required to terminate parental rights and order the child be placed for adoption unless a statutory exception applies.  (§ 366.26, subd. (c)(1).)  One such exception is the beneficial parent-child relationship exception, which applies when "[t]he court finds a compelling reason for determining that termination would be detrimental to the child," because "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."  (§ 366.26, subd. (c)(1)(B)(i).)  A parent claiming an exception to adoption has the burden of proof to establish by a preponderance of evidence that the exception applies.  (*In re Melvin A*. (2000) 82 Cal.App.4th 1243, 1252.)

To establish the beneficial parent-child relationship exception, the parent must show by a preponderance of the evidence three elements:  "(1) regular *visitation and contact*, and (2) a *relationship*, the continuation of which would *benefit* the child such that (3) the termination of parental rights would be *detrimental* to the child."  (*In re Caden C*. (2021) 11 Cal.5th 614, 631 (*Caden C.*); see *id.* at p. 636.)  In assessing whether termination would be detrimental, the juvenile court "must decide whether the harm from severing the child's relationship with the parent outweighs the benefit to the child of placement in a new adoptive home."  (*Id*. at p. 632.)  When the parent meets this burden, the exception applies such that it would not be in the child's best interest to terminate

11

parental rights, and the court selects a permanent plan other than adoption.  (*Id*. at pp. 636-637.)

The first element of the exception asks the "straightforward" question of whether the parent visited consistently, considering the extent permitted by court orders.  (*Caden C., supra*, 11 Cal.5th at p. 632.)  The focus is on the best interest of the child as opposed to punishing or rewarding parents for good behavior in maintaining contact.  (*Ibid.*)

The second element asks "whether 'the child would benefit from continuing the relationship.' "  (*Caden C., supra*, 11 Cal.5th at p. 632.)  The parent-child relationship "may be shaped by a slew of factors, such as '[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs.' "  (*Ibid*., quoting *In re Autumn H*. (1994) 27 Cal.App.4th 567, 576.)  The juvenile court's focus should again be on the child, and it "must remain mindful that rarely do '[p]arent-child relationships' conform to an entirely consistent pattern."  (*Caden C., supra,* at p. 632.)  "[T]he parent must show that the child has a substantial, positive, emotional attachment to the parent— the kind of attachment implying that the child would benefit from continuing the relationship."  (*Id.* at p. 636.)

When considering the third element, courts must determine "how the child would be affected by losing the parental relationship—in effect, what life would be like for the child in an adoptive home without the parent in the child's life."  (*Caden C., supra*, 11 Cal.5th at p. 633.)  The court is guided by the child's best interest in a "specific way: it decides whether the harm of severing the relationship outweighs 'the security and the sense of belonging a new family would confer.' "  (*Ibid*.)  " 'If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that,' even considering the benefits of a new adoptive home, termination would 'harm[ ]' the child, the court should not terminate parental rights."  (*Ibid*.)  "When the relationship with a parent is so important to the child that the security and stability of

a new home wouldn't outweigh its loss, termination would be 'detrimental to the child *due* to' the child's beneficial relationship with a parent." (*Id*. at pp. 633-634.) "In many cases, 'the strength and quality of the natural parent/child relationship' will substantially determine how detrimental it would be to lose that relationship, which must be weighed against the benefits of a new adoptive home." (*Id.* at p. 634.)

We review a juvenile court's ruling on the application of the beneficial parent-child relationship exception using a "hybrid" standard. (*Caden C., supra*, 11 Cal.5th at p. 641.) The substantial evidence standard applies to the first two elements of regular visitation and existence of a beneficial relationship. (*Id.* at pp. 639-640.) As a reviewing court, we do " 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts' " and will uphold the juvenile court's determinations even when substantial evidence to the contrary also exists. (*Id*. at p. 640.) The juvenile court's decision as to the third element—whether termination of parental rights would be detrimental to the child—is reviewed for an abuse of discretion. (*Ibid*.) "A court abuses its discretion only when ' " 'the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.' " ' " (*Id*. at p. 641.)

In the present case, the juvenile court ruled: "[T]here has been no showing that the benefit of not terminating rights would outweigh the benefit of permanency, and there has been no showing that it would be detrimental to the children." As such, it appears the court found father's evidence of two of the required elements to establish the parental benefit exception were lacking. (*Caden C., supra*, 11 Cal.5th at pp. 631, 636.) At the outset, we highlight that *Caden C*. was decided May 27, 2021, approximately three months prior to the juvenile court's section 366.26 ruling in this case. Accordingly, we presume, in the absence of any evidence to the contrary, that the court was aware of and complied with the law, including *Caden C*. (See, e.g., *People v. Jones* (2017) 3 Cal.5th 583, 616 [" 'In the absence of evidence to the contrary, we presume that the court "knows and applies the correct statutory and case law" ' "].)

13

Father first contends, "given the lack of information about the relationship between the father and children in the social worker's reports and adoption assessments, the juvenile court did not have sufficient information upon which to determine whether the beneficial relationship applied." We disagree. The Agency's August 21, 2021 section 366.26 report for J.H. stated that she was happy in her current home and would like to be adopted if reunification with her father was no longer possible. The adoption assessment reported that J.H. said she had a close and loving relationship with her father. The section 366.26 report stated that father's visits with the younger three half-siblings were consistent and appropriate, and were described as nurturing, bonding, and appropriate. The Agency reports thus discussed the positive nature of the visits and noted that J.H. expressed her feelings about her connection to the father. The absence of evidence in the reports about positive or negative effects of the visits may likely be that none of the children experienced notable negative or positive effects other than enjoying and looking forward to the visits.

Further, the two cases father cites in support of his contention, *In re J.D.* (2021) 70 Cal.App.5th 833 (*J.D.*) and *In re D.M.* (2021) 71 Cal.App.5th 261 (*D.M.*), are distinguishable from the case at hand. In *J.D.*, the juvenile court terminated parental rights after making "few explicit factual findings concerning the parental benefit exception." (*J.D., supra*, at p. 851.) The appellate court reversed and remanded because it could not be "certain the juvenile court did not consider factors disapproved of in *Caden C.*" (*Id.* at p. 854.) The agency's reports focused on the connection between the caretaker, who was a relative of the mother, and the child, but "such evidence does not preclude a finding he had a significant positive attachment to mother." (*Id.* at p. 859.) Conversely, there was "very little information in its prior reports during the case about the quality of mother's relationship with" the child. (*Id.* at p. 860.) The appellate court found that, though it is not the agency's burden to disprove the beneficial relationship exception, "by the time the juvenile court scheduled the section 366.26 hearing, the

14

agency's prior reports should already have provided objective, disinterested information about the quality of [the child's] attachment to his mother." (*Id.* at p. 861.)

Similarly, in *D.M.*, the juvenile court terminated the father's parental rights after a brief analysis finding the beneficial parental relationship exception did not apply. (*D.M., supra*, 71 Cal.App.5th at p. 268.) The appellate court reversed and remanded because the juvenile court "said nothing about the attachment between father and his children. *Caden C.* made clear the beneficial relationship exception is *not* focused on a parent's ability to care for a child or some narrow view of what a parent-child relationship should look like." (*Id.* at p. 270.) The agency's reports also "gave the court little evidence about the quality of the visits between father and the children, or how the children felt about father." (*Ibid.*) The record did include the father's testimony that "the children wanted to be returned to him, and that the youngest child cried when visits concluded." (*Id.* at p. 271.) As opposed to this case, both *J.D.* and *D.M.* evaluated pre-*Caden C.* judicial findings on the beneficial parental relationship exception to determine whether the records were sufficient under *Caden C.* Further, in each of these cases, the agencies' reports failed to describe the quality of the visitation. As we have described, the Agency did describe the quality of visits between father and the minors here. Accordingly, father has not demonstrated error.

Next, father contends the juvenile court abused its discretion by considering an improper factor. He correctly states that the court is not permitted to consider post-adoption contact. (*J.D., supra*, 70 Cal.App.5th at p. 866; *Caden C., supra*, 11 Cal.5th at p. 633.) However, there is no indication in the record that the court did consider the possibility of post-adoption contact in finding that termination of parental rights would not be detrimental to the children. The adoption assessment noted that for the three younger children, the maternal aunt did not want to pursue a formal post-adoption contact agreement but would allow continued monitored visitation with father, and the Agency's counsel observed at the hearing that, because the minors were placed with family, there

15

was the opportunity to maintain those familial relationships. There is no indication in the court's ruling that it relied on this information in making its decision.

Father contends that because "[i]t cannot be determined whether or to what extent the court relied on the expectation of future visitation with [father] in determining that the children would not be greatly harmed by termination of parental rights[,] . . . the matter must be reversed and remanded for the juvenile court to consider, under the proper legal standards, whether the parental benefit exception applies." Not so. As we have noted, *Caden C.* was decided several months prior to the juvenile court's section 366.26 ruling in this case. (*Caden C., supra*, 11 Cal.5th 614.) We presume, in the absence of any evidence to the contrary, that the court was aware of and complied with the law, including *Caden C.* (See *People v. Jones, supra*, 3 Cal.5th at p. 616.) Accordingly, we reject father's claim of error.

C.    ICWA

Father argues, and the Agency concedes, that the Agency failed to make an adequate inquiry of family members to determine if the minors had Indian ancestry and failed to make the required inquiry or notice to the Blackfeet Tribe, the Shawnee Tribe, and the Apache Tribes. We agree.

"The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings. (See 25 U.S.C. § 1902; *In re Levi U.* (2000) 78 Cal.App.4th 191, 195-196.) A major purpose of the ICWA is to protect 'Indian children who are members of or are eligible for membership in an Indian tribe.' (25 U.S.C. § 1901(3).)" (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) The ICWA defines an "Indian child" as a child who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) The juvenile court and the Department have an affirmative and continuing duty, beginning at initial

16

contact, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child.  (Rule 5.481(a); § 224.2, subd. (a).)

Section 224.2, subdivision (e) provides that if the court or social worker has *reason to believe* that an Indian child is involved in a proceeding, the court or social worker shall, as soon as practicable, make further inquiry regarding the possible Indian status of the child.  Further inquiry includes, but is not limited to:  (1) interviewing the parents, Indian custodian, and extended family members to gather the information required in paragraph (5) of subdivision (a) of Section 224.3[3]; (2) contacting the BIA and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership in; and (3) contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility.  Contact with a tribe must, at a minimum, include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of notices under the ICWA, and sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case.  (§ 224.2, subd. (e).)

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings.  First, from the Agency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child.  (§ 224.2, subds. (a), (b).)  Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as

---

[3] Section 224.3, subdivision (a)(5) includes the name, birth date, and birthplace of the Indian child, if known; the name of the Indian tribe; and the names and other identifying information of the Indian child's biological parents, grandparents, and great-grandparents, if known.

17

practicable.' (*Id.,* subd. (e), italics added.)  Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply.  (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child']; *id.,* subd. (d) [defining circumstances that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].)"  (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)

We review claims of inadequate inquiry into a child's Native American ancestry for substantial evidence.  (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430.)

Here, there was reason to believe the children were Indian children based on father's and A.S.'s reports, and the Agency failed to contact father's extended family members, B.M.'s family members other than the maternal grandfather, or A.S.'s family members other than the maternal grandmother.  Additionally, based on the information A.S. and the maternal grandmother reported, the social worker should also have made and documented further inquiry to the Blackfeet Tribe, the Shawnee Tribe, and the eight federal recognized Apache Tribes.  Because the record demonstrates that the Agency failed to discharge its inquiry duty, we will conditionally affirm but remand for ICWA compliance.

18

## III.  DISPOSITION

The orders terminating parental rights are conditionally affirmed subject only to full compliance with the ICWA as described in this opinion.  If, on remand, the juvenile court determines the ICWA applies, the court shall vacate its previous orders terminating parental rights and conduct further proceedings consistent with the ICWA, including a new section 366.26 hearing.  (25 U.S.C. § 1914; § 224, subd. (e).)

/S/

_____

RENNER, J.

We concur:

/S/

_____

HULL, Acting P. J.

/S/

_____

DUARTE, J.